1
2
3
4
5          IN THE UNITED STATES DISTRICT COURT FOR THE
6                 EASTERN DISTRICT OF CALIFORNIA
7
8  CANDY KELLY, an individual, and        )   CIV- F-05-118 AWI SMS
   DAVID MICHAEL KELLY, an                )
9  individual,                            )   ORDER ON DEFENDANT
                                          )   QUALITEST'S RULE 12
10                          Plaintiffs,   )   MOTIONS
                                          )
11            v.                          )
                                          )
12 EVERETT R. ECHOLS, M.D., an            )
   individual; TOM A. CHAPMAN, an         )
13 individual; EZ RX, an unknown business )
   entity, QUALITEST                      )
14 PHARMACEUTICALS, INC., a domestic)
   corporation, and DOES 1-10, inclusive, )
15                                        )
                            Defendants.   )
16 _____    )
17

18        This case stems from the dual suicide of a mother (Leisa Kelly) and son (Ryan Kelly)

19 after they obtained an anti-depressant, Elavil, from an on-line pharmacy.  Plaintiffs Candy Kelly

20 and David Kelly are the relatives of the decedents (the mother and brother of Leisa/grandmother

21 and uncle of Ryan).  Plaintiffs have brought California state law claims only.  Defendant

22 Qualitest Pharmaceuticals now brings Rule 12(b)(1), Rule 12(b)(3), Rule 12(b)(6), and Rule

23 12(f) motions against Plaintiffs' complaint.

                                   **FACTS**

24        According to Plaintiffs' complaint, Leisa and Ryan Kelly were both residents of

25 California and under the care of a California licensed physician at all relevant times.  Leisa and

26 Ryan were being professionally treated for depression and their physician carefully monitored

27 their intake of psychotherapeutic drugs, never allowing them to obtain the drugs in lethal doses.

28

On January 21, 2004, either Leisa in her own name or Ryan using his mother's name (most likely the latter) accessed the RX Medical website and requested 90-150 mg tablets of Elavil (amitriptyline). Elavil is manufactured by Defendant Qualitest, an Alabama corporation doing business in Alabama. In the questionnaire used to request the Elavil, it was asked, "What is the medical condition that you are requesting this medication for?" The answer given by either Leisa or Ryan was "severe depression."

On January 31, 2004, Leisa and Ryan used the Elavil to commit suicide. When the California authorities discovered the bodies of Leisa and Ryan, they also found an empty bottle of Elavil which indicated that the bottled contained 90-150 mg tablets of Elavil and that the prescription had been authorized by Dr. Echols. No prior physician-patient relationship existed between Dr. Echols and Leisa and Ryan. The autopsy report indicated that both Leisa and Ryan had died from "amitriptyline toxicity inducing suicide." Leisa's physician has indicated that, in her condition, Leisa should never have been prescribed amitriptyline by anyone.

Defendants Chapman and Dr. Echols, both residents of North Carolina, reviewed the on-line questionnaires submitted by individuals to RX Medical, a Nevada corporation doing business in Florida. Individuals such as Leisa and Ryan access a website operated and maintained by RX Medical and complete an on-line questionnaire in order to obtain specific prescription drugs. Dr. Echols and Chapman review the questionnaires and, based upon their review, authorize a prescription for the individual for the drug he seeks. The prescription is then transmitted electronically to the on-line pharmacy associated with RX Medical. The pharmacy then fills the prescription and sends the prescription drugs, usually by overnight shipping, to the individual who requested the drugs in whatever quantity requested in the on-line questionnaire. In this case, the pharmacy was Defendant EZ RX, a pharmacy doing business in, and whose principle place of business is, New Jersey. EZ RX and RX Medical are owned and operated by Defendants F. Hernandez and A. Hernandez. At some point, EZ RX has lost its license to continue business.

2

In reviewing the on-line questionnaires, neither Dr. Echols nor Chapman personally examines any of the individuals who access RX Medical's website.  No physician-patient relationship exists between Dr. Echols or Chapman and any of the individuals who access the RX Medical website.

Other than alleging that Qualitest manufactures Elavil, Plaintiffs allege, "Qualitest was negligent in the sale of controlled substances and dangerous drugs to on-line pharmacies which lacked the proper licenses, failed to adequately supervise physicians, and dispensed drugs in lethal doses to patients who should not have had access to large quantities of drugs such as amitriptyline."  Plaintiffs's First Amended Complaint at ¶ 30.

## **LEGAL STANDARD**

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows for a motion to dismiss based on lack of subject matter jurisdiction.  See Fed. R. Civ. Pro. 12(b)(1).  It is a fundamental precept that federal courts are courts of limited jurisdiction.  Limits upon federal jurisdiction must not be disregarded or evaded.  Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978).  A Rule 12(b)(1) motion may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint.  Savage v. Glendale Union High School Dist. No. 205, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).  The plaintiff has the burden to establish that subject matter jurisdiction is proper.  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); In re Ford Motor Co., 264 F.3d 952, 957 (9th Cir. 2001).  This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over the action.  McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Fed. R. Civ. P. 8(a)(1).  The pleading must show "affirmatively and distinctly the existence of whatever is essential to federal jurisdiction, and if [it] does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by

3

amendment." <u>Tosco Corp. v. Communities For A Better Env't</u>, 236 F.3d 495, 499 (9th Cir. 2001).  When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself.  <u>See</u> <u>Miranda v. Reno</u>, 238 F.3d 1156, 1157 n.1 (9th Cir. 2000); <u>Thornhill Publishing Co. v. General Telephone Electronics</u>, 594 F.2d 730, 733 (9th Cir. 1979); <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F. 2d 884, 891 (3d Cir.1977); <u>Devries v. IRS</u>, 359 F.Supp.2d 988, 991 (E.D. Cal. 2005).  Since subject matter jurisdiction must be affirmatively alleged, courts will not infer allegations supporting federal jurisdiction.  <u>See</u> <u>Watson v. Chessman</u>, 362 F.Supp.2d 1190, 1194 (S.D. Cal. 2005); <u>see also</u> <u>Tosco Corp.</u>, 236 F.3d at 499; <u>Century Southwest Cable Television, Inc. v. CIIF Assocs.</u>, 33 F.3d 1068, 1071 (9th Cir. 1994).

Under 28 U.S.C. § 1331, federal district courts have jurisdiction over all claims "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  A case falls under § 1331 when "a right or immunity created by the Constitution or laws of the United States must be an element, and essential one, of the plaintiff's cause of actions.  The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another."  <u>Gully v. First Nat'l Bank in Meridian</u>, 299 U.S. 109, 112 (1936); <u>see also</u> <u>California ex. rel. Lockyer v. Dynegy, Inc.</u>, 375 F.3d 831, 838 (9th Cir. 2004); <u>Patrickson v. Dole Food Co.</u>, 251 F.3d 795, 799 (9th Cir. 2001).  "Federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  <u>Dynegy, Inc.</u>, 375 F.3d at 838.  Since a defense is not part of the a plaintiff's properly pleaded complaint, that a defendant may raise a defense or that there is an assertion that federal law deprives a defendant of a defense are both insufficient to confer jurisdiction under § 1331.  <u>See</u> <u>id.</u>

Under 28 U.S.C. § 1332, a district court has jurisdiction when the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of

different states.  28 U.S.C. § 1332(a)(1).  In order to justify dismissal of the suit for failure to meet § 1332 standards, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount."  St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938); Crum v. Circus Circus Enterprises, 231 F.3d 1129, 1131 (9th Cir. 2000); Budget Rent-A-Car, Inc. v. Higashiguchi, 109 F.3d 1471, 1473 (9th Cir. 1997).  The amount in controversy is generally determined from the face of the pleadings.  See Crum, 231 F.3d at 1131; Pachinger v. MGM Grand Hotel-Las Vegas, Inc., 802 F.2d 362, 363 (9th Cir. 1986).  As long as the sum claimed by the plaintiff is made in good faith, that sum controls.  See St. Paul Mercury Indem., 303 U.S. at 288; Crum, 231 F.3d at 1131.  Where there are multiple plaintiffs with separate and distinct claims, each plaintiff must individually meet the $75,000 threshold.  See Snyder v. Harris, 394 U.S. 332, 335-36 (1969); Troy Bank v. G.A. Whitehead & Co., 222 U.S. 39, 40 (1922); In re Ford Motor Co., 264 F.3d at 963; Gibson v. Chrysler Corp., 261 F.3d 927, 943 (9th Cir. 2001).  However, when "plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount."  Troy Bank, 22 U.S. at 40-41; Gibson, 261 F.3d at 943.  The aggregation exception "is appropriate only where a defendant 'owes an obligation to the group of plaintiffs as a group and not to the individuals severally.'"  Gibson, 261 F.3d at 944.  Aggregation typically occurs when there is a "single indivisible res" and concerns "matters that cannot be adjudicated without implicating the rights of everyone involved with the res."  Gibson, 261 F.3d at 945.  Thus, "the question [for aggregation] becomes whether each plaintiff is asserting an individual right or, rather, together the plaintiffs 'unite to enforce a single title or right in which they have a common and undivided interest.'"  In re Ford, 264 F.3d at 959 (quoting Snyder, 394 U.S. at 335).

*Discussion*

**a.      Federal Question Jurisdiction**

*Arguments*

Defendant argues that the complaint is devoid of any claims based on federal statutes.

Plaintiffs argue that the Food and Drug Administration (FDA) regulates the production and distribution of drugs; Qualitest is therefore subject to these regulations.  Accordingly, Plaintiffs argue that, although the complaint does not allege a federal question, it could do so.

*Resolution*

Plaintiffs admit that there are no allegations or causes of action based on federal law, and none appear on the face of Plaintiffs's complaint.  As "master of the complaint," if Plaintiffs wished to allege federal question jurisdiction, they should have done so.  See Dynegy, Inc., 375 F.3d at 838-39.  Because "federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint," there is no jurisdiction in this case based on 28 U.S.C. § 1331.  See 28 U.S.C. § 1331; Dynegy, Inc., 375 F.3d at 838.

**b.      Diversity Jurisdiction**

*Defendant's Argument*

Defendant argues that Plaintiffs' allege that their "combined damages" are "in excess of $75,000."  This allegation, however, does not permit the court to determine whether either of the plaintiffs have suffered individual damages in excess of $75,000.  Defendant also argues that Plaintiffs do not fit any exception to the rule prohibiting the aggregation of damages by multiple plaintiffs.  Defendant argues that the exception only applies where a defendant owes an obligation to a group as a group and not to the individuals severally.  Here, the claims by Candy and David Kelly are separate and not a "single indivisible res" owned jointly by them.  Under California wrongful death law, the court is to determine the respective rights in an award of the persons entitled to assert a cause of action.  Additionally, general California law requires that damages must be awarded according to an individual determination.  Here, the amount of damages suffered will differ depending on each Plaintiffs' closeness to the decedents, possible dependence on decedents, and numerous individual assessments.  Because Plaintiffs's claims are "cognizable, calculable, and correctable individually," aggregation is inappropriate and Plaintiffs have failed to properly alleged jurisdiction under 28 U.S.C. § 1332.

6

1        *Plaintiffs' Opposition*

2            Plaintiffs argue that the complaint does not disclose to "a legal certainty" that damages do

3    not exceed $75,000.  Given that this case involves wrongful death, amendment can correct any

4    deficiency.  However, amendment is not necessary as Candy and David are heirs at law of

5    decedents and claims by heirs at law for wrongful death is single, unitary, and indivisible.  See

6    National Metal & Steel Corp. v. Colby Crane & Mnfg. Co., 200 Cal.App.3d 1111, 1115 (1988).

7    A single verdict is rendered for all recoverable damages, see Cross v. Pacific Gas & Electric, 60

8    Cal.2d 690, 694 (1964), and the respective rights of the heirs in any award are determined by the

9    court after the jury has made the award.  See Cal. Code Civ. P. § 377(a).  Additionally, Plaintiffs

10   argue that no exception to the non-aggregation rule is necessary because this case involves the

11   deaths of two relatively young people and the family was very close.

12       *Resolution*

13           There are two plaintiffs who allege that their claims combine to exceed $75,000.

14   However, for § 1332 purposes, each plaintiff must individually meet the $75,000 minimum.  See

15   Snyder, 394 U.S. at 335-36; Troy Bank, 222 U.S. at 40; In re Ford Motor Co., 264 F.3d at 963;

16   Gibson, 261 F.3d at 943.  Plaintiffs' reliance on *National Metal* and *Cross* for the proposition

17   that a wrongful death cause of action is a "joint" or "single" cause of action such that

18   "aggregation" is appropriate is simply misplaced.  *National Metal*'s discussion of the wrongful

19   death statute is expressly based on *Cross*.  See National Metal, 200 Cal.App.3d at 1115.  In

20   *Cross*, the California Supreme Court discussed the individuality of the claims of each heir as well

21   as the "one-action rule," i.e. a wrongful death action is joint, single, and indivisible.  See Cross,

22   60 Cal.2d at 694.  *Cross* explained:

23           Section 377 of the Code of Civil Procedure is a procedural statute establishing
             compulsory joinder and *not a statute creating a joint cause of action*. Otherwise,
24           its provisions could not be waived.

25           Although recovery under section 377 is in the form of a "lump sum," the amount is
             determined in accordance with the various heirs' separate interests in the deceased's life
26           and the loss suffered by each by reason of the death, and no recovery can be had by an
             heir who did not sustain a loss.

27

28                                              7

Accordingly, *each heir should be regarded as having a personal and separate cause of action.*
. . . . . . . . . . . . .

In stating that an action for wrongful death is joint, it is meant that all heirs should join or be joined in the action and that a single verdict should be rendered for all recoverable damages; when it is said that the action is single, it is meant that only one action for wrongful death may be brought whether, in fact, it is instituted by all or only one of the heirs, or by the personal representative of the decedent as statutory trustee for the heirs; and when it is said that the action is indivisible, it is meant that there cannot be a series of suits by heirs against the tortfeasor for their individual damages.

Cross, 60 Cal.2d at 692-94 (citations omitted) (emphasis added);[1] see also Ruttenberg v. Ruttenberg, 53 Cal.App.4th 801, 807-08 (1997); National Metal, 200 Cal.App.3d at 1115. From *Cross*, it is clear that "each heir has a personal and separate cause of action, and a separate rather than a joint interest." Ruttenberg, 53 Cal.App.4th at 807-08 (citing Cross, 60 Cal.2d at 692-94). Because each heir in a wrongful death cause of action has a separate and personal/individual cause of action, the "non-aggregation" rule applies, and Plaintiffs may not aggregate their claims against Defendant to reach the $75,000 threshold. See Snyder, 394 U.S. at 335-36; Troy Bank, 222 U.S. at 40; In re Ford Motor Co., 264 F.3d at 963; Gibson, 261 F.3d at 943; Cross, 60 Cal.2d at 692-94; Ruttenberg, 53 Cal.App.4th at 807-08; National Metal, 200 Cal.App.3d at 1115.

Although aggregation is not permissible, Plaintiffs' point is well taken that this case involves the deaths of two family members. Given that two deaths are involved, it does not appear to a legal certainty that the Plaintiffs, or rather Candy Kelly,[2] cannot individually meet the minimum jurisdictional requirement. See St. Paul Mercury Indem., 303 U.S. at 289; Crum, 231 F.3d at 1131. Amendment of the complaint for purposes of establishing jurisdiction and

---

[1]*Cross* interpreted California Code of Civil Procedure § 377. That section has been repealed and is now found at § 377.61 and § 377.62 of California Code of Civil Procedure. However, the Court sees no reason why the language and rationale of *Cross* would not be applicable to the current incantation of California's statutory wrongful death cause of action.

[2]Given the resolution of Defendant's standing argument as to David Kelly, it is only important that Candy Kelly meet the jurisdictional minimum.

1    compliance with 28 U.S.C. § 1332 does not appear at this juncture to be futile.  Accordingly,

2    dismissal without prejudice and with leave to amend is appropriate.  See Tosco Corp., 236 F.3d

3    at 499; CMC Corp. v. Kern County Land Co., 290 F.Supp. 695, 697 (N.D. Cal. 1968) (granting

4    Rule 12(b)(1) motion with leave to amend).

5                                              **STANDING**

6            "Standing is a necessary element of federal-court jurisdiction."  Byrd v. Guess, 137 F.3d

7    1126, 1131 (9th Cir. 1998); Big Country Foods, Inc. v. Board of Education, 952 F.2d 1173, 1176

8    (9th Cir. 1992).  The question of standing is "whether the plaintiff has 'alleged such a personal

9    stake in the outcome of the controversy' as to warrant his invocation of federal-court

10   jurisdiction."  Warth v. Seldin, 422 U.S. 490, 498 (1975) (citation omitted); Immigrant

11   Assistance Project of the L.A. County Fed'n of Labor v. INS, 306 F.3d 842, 859 (9th Cir. 2002).

12   Stated differently, a "party seeking to invoke the court's authority must demonstrate 'such a

13   personal stake in the outcome of the controversy as to assure that concrete adverseness which

14   sharpens the presentation of the issues upon which the court so largely depends. . .'"  Pegasus

15   Satellite TV, Inc. v. DirecTV, Inc., 318 F. Supp. 2d 968, 975 (C.D. Cal. 2004) (quoting Baker v.

16   Carr, 369 U.S. 186, 204 (1962)).  In order to establish standing, a plaintiff must first show that

17   she has suffered an "'injury in fact' - an invasion of a legally protected interest which is (a)

18   concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  Lujan,

19   504 U.S. at 560 (internal quotation marks and citations omitted); Scott v. Pasadena Unified Sch.

20   Dist., 306 F.3d 646, 654 (9th Cir. 2002).  The injury in fact may be "economic or otherwise."

21   See Schmeir v. United States Court of Appeals, 279 F.3d 817, 823 (9th Cir. 2002) (discussing

22   Sierra Club v. Morton, 405 U.S. 727, 738 (1972)); see also Association of Data Processing Orgs.

23   v. Camp, 397 U.S. 150, 152 (1970).  Second, the injury must be "fairly traceable to the

24   challenged action of the defendant."  Lujan, 504 U.S. at 560; Scott, 306 F.3d at 654.  Third, "it

25   must be 'likely,' as opposed to merely 'speculative,' that the injury is remediable by appropriate

26   court action;" that is, the relief requested will redress or prevent the injury.  Lujan, 504 U.S. at

27

28                                                  9

561; Scott, 306 F.3d at 654; Pegasus Satellite, 318 F.Supp.2d at 975.  As the Supreme Court has

explained:

> The party invoking federal jurisdiction bears the burden of establishing these elements.  Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.  At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presume that general allegations embrace those specific facts that are necessary to support the claim."  In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," which for purposes of the summary judgment motion will be taken to be true.  And at the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial."

Lujan, 504 U.S. at 561 (internal citations omitted).  If a complaint's allegations are insufficient to

confer standing, "often a plaintiff will be able to amend its complaint to cure standing

deficiencies."  Byrd, 137 F.3d at 1131.

### *Defendant's Argument*

Defendant argues that California Code of Civil Procedure § 377.60 in tandem with

Probate Code § 6402 establish who has standing under the wrongful death statute.  Defendant

argues that these statutes establish three categories of persons with standing:  (1) surviving

spouse or partner and children (or if none, the children's issue); or (2) if no surviving children,

then persons entitled to the decedent's property through intestate succession {successively: (a)

issue of decedent, or if none; (b) decedent's parents, or if none; (c) issue of decedent's parents, or

if none; (d) to grandparents}; or (3) a putative spouse, children of the putative spouse,

stepchildren, or parents if dependent on the decedent.

Defendant argues that David Kelly lacks standing as to Leisa Kelly because Leisa Kelly's

mother, Candy Kelly, is alive and a Plaintiff in this lawsuit.  As to Ryan Kelly, David Kelly is

Ryan's uncle and uncles do not fit into any category of § 377.60 or § 6402.  Because Candy Kelly

is alive, under § 377.60 and § 6402 David Kelly lacks standing to bring a wrongful death suit.

Defendant argues that Candy Kelly has merely alleged that she is the mother of Leisa and

the grandmother of Ryan.  However, the complaint does not mention whether Leisa has surviving

issue and does not mention whether Ryan has or does not have surviving issue, siblings, a father,

or a spouse.  Because Candy Kelly has not alleged that those "higher up" than her on the intestate

succession ladder do not exist, she has failed to show to properly allege standing.

### *Plaintiffs' Opposition*

Plaintiffs argue that all relatives of a decedent may bring a wrongful death action under §

377.60(a) so long as they are "entitled to the property of the decedent by intestate succession."

Thus, all heirs and potential heirs are eligible.  Candy Kelly is the direct heir.  However, if she

should not survive this matter, David Kelly is the only remaining heir.  Not including David

Kelly is bad legal practice given the age of Candy Kelly.  Good legal practice is to include all

potential heirs, and David Kelly and Candy Kelly are the only known heirs.  Only one wrongful

death lawsuit is allowed.  If Candy Kelly does not survive this lawsuit, and David Kelly were not

a Plaintiff, David Kelly would be barred from a second independent action.  Also, Ryan was the

only child of Leisa and the location of Ryan's father has been unknown since birth.

### *Standing Under The California Wrongful Death Act*

In California, the statutory right to bring a wrongful death action under section 377.60(a)

"is grounded in the right to inherit from the decedent . . . [and] the purpose behind the wrongful

death statute is to provide compensation for the loss of companionship and other losses resulting

from decedent's death."  Cheyanna M. v. A.C. Nielsen Co., 66 Cal.App.4th 855, 864 (1998).

Nevertheless, the cause of action for wrongful death is "a pure creature of the statute" and

"'exists only so far and in favor of such person as the legislative power may declare.'"  Justus v.

Atchison, 19 Cal.3d 564, 575 (1977); Rosales v. Battle, 113 Cal.App.4th 1178, 1182 (2003);

Chavez v. Carpenter, 91 Cal.App.4th 1433, 1438-1440 (2001); Fraizer v. Velkura, 91

Cal.App.4th 942, 945 (2001).  Standing to sue is governed by California Code of Civil Procedure

§ 377.60, and the category of persons eligible to bring wrongful death actions is strictly

construed.  Cal. Code Civ. Pro. § 377.60; Steed v. Imperial Airlines, 12 Cal.3d 115, 119-20

(1974); Bouley v. Long Beach Memorial Medical Center, 127 Cal.App.4th 601, 606 (2005); Chavez, 91 Cal.App.4th at 1438; Fraizer, 91 Cal.App.4th at 945; Marks v. Lyerla, 1 Cal. App. 4th 556, 559-60 (1991). The legislative determination as to how far to extend a statutorily created right of action "is conclusive, unless it appears beyond rational doubt that an arbitrary discrimination between persons or classes similarly situated has been made without any reasonable cause therefor." Justus, 19 Cal.3d at 581; Holguin v. Flores, 122 Cal.App.4th 428, 437-38 (2004).

Section 377.60 establishes the wrongful death cause of action and delineates who may avail themselves of the action. In relevant part, it reads:

> A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf:
>
> (a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession.
>
> (b) Whether or not qualified under subdivision (a), if they were dependent on the decedent, the putative spouse, children of the putative spouse, stepchildren, or parents. As used in this subdivision, "putative spouse" means the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid.

Cal. Code Civ. Pro. § 377.60.

Probate Code § 6402 sets the order of intestate succession under § 377.60. See Chavez, 91 Cal.App.4th at 1440; Frazier, 91 Cal.App.4th at 946. When there is no surviving spouse or domestic partner, § 6402, in relevant part, provides the following succession:

> (a) To the issue of the decedent, the issue taking equally if they are all of the same degree of kinship to the decedent, but if of unequal degree those of more remote degree take in the manner provided in Section 240.
>
> (b) If there is no surviving issue, to the decedent's parent or parents equally.
>
> (c) If there is no surviving issue or parent, to the issue of the parents or either of them, the issue taking equally if they are all of the same degree of kinship to the decedent, but if of unequal degree those of more remote degree take in the manner provided in Section 240.

12

(d) If there is no surviving issue, parent or issue of a parent, but the decedent is survived by one or more grandparents or issue of grandparents, to the grandparent or grandparents equally, or to the issue of those grandparents if there is no surviving grandparent, the issue taking equally if they are all of the same degree of kinship to the decedent, but if of unequal degree those of more remote degree take in the manner provided in Section 240.

(e) If there is no surviving issue, parent or issue of a parent, grandparent or issue of a grandparent, but the decedent is survived by the issue of a predeceased spouse, to that issue, the issue taking equally if they are all of the same degree of kinship to the predeceased spouse, but if of unequal degree those of more remote degree take in the manner provided in Section 240.

(f) If there is no surviving issue, parent or issue of a parent, grandparent or issue of a grandparent, or issue of a predeceased spouse, but the decedent is survived by next of kin, to the next of kin in equal degree, but where there are two or more collateral kindred in equal degree who claim through different ancestors, those who claim through the nearest ancestor are preferred to those claiming through an ancestor more remote.

Cal. Prob. Code § 6402(a)-(f).  A plaintiff who brings a wrongful death suit as an heir must establish the absence of issue by the decedent and the entitlement or propriety of the heir to seek recovery under § 377.60, i.e. that the heir actually has standing under § 377.60.  See Nelson v. County of Los Angeles, 113 Cal.App.4th 783, 789 (2004); Coats v. K-Mart Corp., 215 Cal.App.3d 961, 969-70 (1989); Jolley v. Clemens, 28 Cal.App.2d 55, 74-75 (1938).

**a.    Standing For The Alleged Wrongful Death Of Leisa Kelly**

The complaint alleges that Candy Kelly was the mother of Leisa Kelly and that David Kelly was the brother of Leisa Kelly.  Parents and brothers are not a "surviving spouse, domestic partner, children, [or] issue of deceased children."  See Cal. Code Civ. Pro. § 377.60(a).  For purposes of § 377.60(a), Candy and David Kelly would have to establish the absence of surviving issue and standing through the intestate succession statute.  See id.  For purposes of intestate succession, parents may recover as heirs if there is no issue of the decedent.  See Cal. Prob. Code § 6402(b); Chavez, 91 Cal.App.4th at 1438.  The complaint does not allege that Leisa Kelly had no other issue.  If Leisa Kelly had no other issue, then Candy Kelly has standing to

13

1  bring a wrongful death cause of action.[3]  See Cal. Code Civ. Pro. § 377.60(a); Cal. Prob. Code §

2  6402(b); Chavez, 91 Cal.App.4th at 1438.  Plaintiffs' opposition indicates that Leisa Kelly had

3  no other issue.  Standing is being challenged through the medium of Rule 12(b)(6) which limits

4  review to the complaint itself.  See Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).

5   The complaint itself is deficient in establishing standing viz a vie Candy Kelly to Leisa Kelly.

6  Since it appears that amendment could cure this defect, leave to amend is appropriate.

7          With respect to David Kelly, David would appear to fit under § 6402(c) as the "issue of

8  parents."  See Cal. Prob. Code § 6402(c).  However, that section only applies where the decedent

9  has no surviving issue or parents.  See id.  As Candy Kelly is alive, the mother of Leisa Kelly,

10  and a plaintiff in this lawsuit, she is the heir who would inherit under the law of intestate

11  succession.  As Candy Kelly is alive, David Kelly is not considered an heir.  See Chavez, 91

12  Cal.App.4th at 1440 (noting that "where a decedent leaves issue, [the decedent's] parents would

13  not be his heirs at all and therefore not entitled to maintain this [wrongful death] action at all");

14  Jolley, 28 Cal.App.2d at 74.  As between Candy Kelly and David Kelly, Candy Kelly is the only

15  proper plaintiff under § 377.60(a).  See Chavez, 91 Cal.App.4th at 1440.  Plaintiffs argue that

16  "good policy" requires that David Kelly remain a party to this suit.  However, the cases cited by

17  Plaintiffs do not discuss possible exceptions or "good policy" reasons to depart from § 377.60's

18  strict interpretation.  The category of persons eligible to bring wrongful death actions is strictly

19  construed.  Steed, 12 Cal.3d at 119-20; Bouley, 127 Cal.App.4th at 606; Chavez, 91 Cal.App.4th

20  at 1438; Fraizer, 91 Cal.App.4th at 945; Marks, 1 Cal.App.4th at 559-60.  David Kelly simply

21  does not have standing to bring a wrongful death action for the death of Leisa Kelly.

22      **b.      Standing For The Alleged Wrongful Death Of Ryan Kelly**

23          From the complaint, Candy Kelly was the grandmother of Ryan Kelly and David Kelly

24  was the uncle of Ryan Kelly.  Grandparents and uncles are not a "surviving spouse, domestic

25

26          [3]Irrespective of § 377.60(a) and the law of intestate succession, if Candy Kelly was dependent upon Leisa

27  Kelly, then Candy Kelly would have standing under § 377.60(b).  See Cal. Code Civ. Pro. § 377.60(b).

28                                      14

partner, children, [or] issue of deceased children." <u>See</u> Cal. Code Civ. Pro. § 377.60(a).  For purposes of § 377.60(a), Candy and David Kelly would have to establish the absence of surviving issue and standing through the intestate succession statute.  <u>See id.</u>  For purposes of intestate succession, grandparents may recover as heirs if there is no issue of the decedent, no surviving parents of the decedent, and no surviving issue of the decedent's parents.  <u>See</u> Cal. Prob. Code § 6402(d).  The ability of uncles to inherit is dependent on the absence of other heirs, including grandparents.  <u>See</u> Cal. Prob. Code §§ 6402(f), (g).

For the same reasons that David Kelly lacks standing as to Leisa Kelly as described above, he also lacks standing as to Ryan Kelly.  Quite simply, because Candy Kelly is alive, she would prevent David Kelly from inheriting as an heir.  <u>See</u> Cal. Code Civ. Pro. § 377.60(a); Cal. Prob. Code § 6402; <u>Chavez</u>, 91 Cal.App.4th at 1440.  As between Candy Kelly and David Kelly, Candy Kelly is the only proper plaintiff.  <u>See</u> <u>Chavez</u>, 91 Cal.App.4th at 1440.  David Kelly lacks standing to bring a wrongful death action for the death of Ryan Kelly.

With respect to Candy Kelly, the complaint has no allegations concerning the existence of any spouse, issue, surviving parents, or issue of parents of Ryan Kelly.  If an individual survived Ryan Kelly and fits within one of these four classifications, then as between that person and Candy Kelly, that person would be the only proper plaintiff.  <u>See</u> Cal. Code Civ. Pro. § 377.60(a); Cal. Prob. Code § 6402; <u>Chavez</u>, 91 Cal.App.4th at 1440.  The opposition indicates that Ryan Kelly was not married, had no siblings, had no issue, and the existence and whereabouts of his father has been unknown since the time of his birth.  Again, standing is being challenged through the medium of Rule 12(b)(6) which limits review to the complaint itself. <u>Campanelli</u>, 100 F.3d at 1479. The complaint itself is deficient in establishing standing viz a vie Candy Kelly to Ryan Kelly.  Since it appears possible that amendment may cure this defect, leave to amend is appropriate.

1

**IMPROPER VENUE**

2

*Rule 12(b)(3)*

3        Federal Rule of Civil Procedure 12(b)(3) allows a defendant to move for dismissal on the

4   basis of improper venue.  See Fed. R. Civ. P. 12(b)(3); Abrams Shell v. Shell Oil Co., 165

5   F.Supp.2d 1096, 1102 (C.D. Cal. 2001).  The plaintiff bears the burden of showing that venue is

6   proper in the chosen district.[4]  Koresko v. Realnetworks, Inc., 291 F.Supp.2d 1157, 1160 (E.D.

7   Cal. 2003); McCaskey v. Continental Airlines, Inc., 133 F.Supp.2d 514, 523 (S.D. Tex. 2001);

8   American Homecare Fed'n v. Paragon Sci. Corp., 27 F.Supp.2d 109, 112 (D. Conn. 1998); Delta

9   Air Lines, Inc. v. Western Conference of Teamsters, 722 F.Supp. 725, 727 (N.D. Ga. 1989); see

10  also Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir.1979) (holding

11  that plaintiff bears the burden to show proper venue in context of summary judgment).  When

12  there are multiple parties and/or multiple claims in an action, the plaintiff must establish that

13  venue is proper as to each defendant and as to each claim.  Pacer Global Logistics, Inc. v.

14  AMTRAK, 272 F.Supp.2d 784, 788 (E.D. Wis. 2003); Bearse v. Main St. Invs., 170 F.Supp.2d

15  107, 116 (D. Mass. 2001); McCaskey, 133 F.Supp.2d at 523; American Homecare, 27 F.Supp.2d

16  at 112; Hickey v. St. Martin's Press, 978 F.Supp. 230, 240-41 (D. Md. 1997); Payne v.

17  Marketing Showcase, Inc., 602 F.Supp. 656, 658 (N.D. Ill. 1985); Eaby v. Richmond, 561

18  F.Supp. 131, 140 (E.D. Pa. 1983); see also Gatz v. Ponsoldt, 271 F.Supp.2d 1143, 1160 (D. Neb.

19  2003); Koh v. Microtek Int'l, Inc., 250 F.Supp.2d 627, 630 (E.D. Va. 2003).  Unlike a motion to

20  dismiss for failure to state a claim under Rule 12(b)(6), the pleadings need not be accepted as

21  true and the court may consider supplemental written materials and consider facts outside of the

22  pleadings in deciding the Rule 12(b)(3) motion.  Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133,

23  1337 (9th Cir. 2004); Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996)

24  (holding that "the pleadings are not accepted as true" and that "facts outside of the pleadings"

25

26  _____

27        [4]Some courts hold that the burden rests with the defense.  See, e.g., Myers v. American Dental Ass'n, 695
    F.2d 812, 816 (3d Cir. 1982).

28                                          16

may be considered in a 12(b)(3) motion); <u>Walker v. Carnival Cruise Lines</u>, 107 F.Supp.2d 1135, 1137 n.2 (N.D. Cal. 2000) (noting that in resolving previous 12(b)(3) motion, "the Court did not assume the truth of the pleadings and considered facts not contained therein."). Accordingly, "venue issues [ordinarily] are resolved on affidavits and declarations." Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial ¶ 4:254 at 4-70 (The Rutter Group 2004); <u>e.g.</u>, <u>Murphy</u>, 362 F.3d at 1140-43 (deciding venue issue through allegations made in affidavits/declarations). If genuine contested factual issues are presented, the court is obligated to draw all reasonable inferences and resolve the factual conflicts in favor of the non-moving party. <u>Murphy</u>, 362 F.3d at 1138-1140 (explaining in part that although "it was error not accept Murphy's version of the facts, and all reasonable inferences thereon, we will examine whether Murphy presented sufficient evidence to survive Schneider's Rule 12(b)(3) motion under the standard we have announced"). Alternatively, the district court may hold a pre-trial evidentiary hearing on the disputed facts or may deny the motion with leave to re-file if further development of the record would eliminate any genuine factual issues. <u>Id.</u> at 1139.

Where venue is improper, the district court has the discretion to dismiss the case under Rule 12(b)(3) or transfer the case in the interests of justice to an appropriate jurisdiction under 28 U.S.C. § 1406(a). <u>See</u> <u>King v. Russell</u>, 963 F.2d 1301, 1304 (9th Cir. 1992); <u>Kawamoto v. CB Richard Ellis, Inc.</u>, 225 F.Supp.2d 1209, 1212 (D. Haw. 2002). In determining whether to transfer or dismiss a case, the court may consider: the applicable statute of limitations, the relative injustice imposed on the parties, whether the suit was filed in bad faith or for harassment, whether the plaintiff has requested or shown an interest in a transfer, and whether the chosen venue was clearly or obviously improper. <u>See</u> <u>Nichols v. G.D. Searle & Co.</u>, 991 F.2d 1195, 1201-02 (4th Cir. 1993); <u>King</u>, 963 F.2d at 1304-05; <u>Johnson v. Payless Drug Stores Northwest, Inc.</u>, 950 F.2d 586, 588 (9th Cir. 1992); <u>Wood v. Santa Barbara Chamber of Commerce</u>, 705 F.2d 1515, 1523 (9th Cir. 1983). "A determination of improper venue does not go to the merits of the case and therefore must be without prejudice." <u>See</u> <u>In re Hall, Bayoutree Assocs., Ltd.</u>,

17

1   939 F.2d 802, 804 (9th Cir. 1991); Schwarzer, Tashima, Cal. Prac. Guide: Fed. Civ. Pro. Before

2   Trial ¶ 9:145.1 at 9-40.  Where venue is improper as to some but not all defendants, the court

3   may cure the defect by either dismissing or transferring the defendants for whom venue is not

4   proper.  See Bastille Properties, Inc. v. Hometels of America, Inc., 476 F.Supp. 175, 178

5   (S.D.N.Y., 1979); M. Dean Kaufman, Inc. v. Warnaco, Inc., 299 F.Supp. 722, 724 (D. Conn.

6   1969); 15 Wright & Miller, Federal Practice & Procedure: Jurisdiction and Related Matters §

7   3827 (1986 & Supp. 2005); see also Cottman Transmission Sys. v. Martino, 36 F.3d 291, 296

8   (3d Cir. 1994); DeJohn v. The .TV Corporation, 245 F.Supp.2d 913, 921-22 (N.D. Ill. 2003)

9   (dismissing one claim against a defendant for improper venue but retaining and dismissing

10   remaining claims on other grounds).

11   *28 U.S.C. § 1391(a)(2)*

12       When jurisdiction is based only on diversity of citizenship, venue is proper in a judicial

13   district where, *inter alia*, "a substantial portion of the events or omissions giving rise to the claim

14   occurred."[5]  28 U.S.C. § 1391(a)(2); Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 563

15   (8th Cir. 2003); Kawamoto, 225 F.Supp.2d at 1212.  Under this statute, "it is possible for venue

16   to be proper in more than one judicial district."  Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir.

17   2004).  It is not necessary that a majority of the events occurred in the district where suit is filed,

18   that the events in that district predominate, or that the chosen district is the "best venue," rather

19   plaintiffs must show that a "substantial part" of the events giving rise to their claims occurred in

20   the chosen district.  See Pecoraro, 340 F.3d at 563; First of Mich. Corp. v. Bramlet, 141 F.3d

21   260, 264 (6th Cir. 1998); Bates v. C & S Adjusters, Inc., 980 F.2d 865, 867 (2d Cir. 1992);

22   Rodriguez v. California Highway Patrol, 89 F.Supp.2d 1131, 1136 (N.D. Cal. 2000).  In other

23

24       [5]28 U.S.C. § 1391(a) reads:

25   (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided
     by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same
26   State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or
     a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any
27   defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the
     action may otherwise be brought.

28                                                    18

words, "significant events or omissions material to the plaintiff's claim must have occurred in the district in question." Gulf Ins. Co. v. Glasbrenner, ___ F.3d ___, 2005 U.S. App. LEXIS 15844, *9 (2d Cir. 2005) (citing Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1372 (11th Cir. 2003); Cottman Transmission, 36 F.3d at 294); see also Engel v. CBS, Inc., 886 F.Supp. 728, 732 (C.D. Cal. 1995).  In determining whether events or omissions are sufficiently substantial to support venue under § 1391(a)(2), the court should review the entire sequence of events underlying the claim.  Mitrano, 377 F.3d at 405; Bramlet, 141 F.3d at 264; Cottman Transmission, 36 F.3d at 294.  However, because venue is a privilege of the defendant,[6] and venue must be appropriate as to each defendant,[7] the court should generally focus on activities of the defendant and not the activities of plaintiff.  Jenkins Brick, 321 F.3d at 1371-72; Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995); Gaines, Enhof, Metzler & Kriner v. Nisberg, 843 F.Supp. 851, 854 (W.D. N.Y. 1994); 17 Moore's Federal Practice, § 110.04[1] (3d ed.).  Events or omissions that might only have some tangential connection with, or no real relationship to, the claims in litigation are not sufficiently "substantial" to support venue.  See Gulf Ins., ___ F.3d ___, 2005 U.S. App. LEXIS 15844 at *9-*10; Cottman Transmission, 36 F.3d at 293-94; see also Engel, 886 F.Supp. at 732. In a tort action, the locus of the injury or harm suffered by plaintiffs is a relevant factor in determining venue under § 1391(a)(2).  Myers v. Bennett Law Offices, 238 F.3d 1068, 1075-76 (9th Cir. 2001); Miracle v. N.Y.P. Holdings, Inc., 87 F.Supp.2d 1060, 1072-73 (D. Haw. 2000).

   *Defendant's Arument*

   Defendant argues that Plaintiffs posit venue in this district under § 1391(a)(2), but that the only events occurring in the Eastern District of California were: (1) accessing a computer website; (2) delivery of the drugs to the decedents; and (3) the suicides.  However, the claim being made against each of the defendants is negligence, but each of the defendant's actions

---

[6]See Cottman Transmission, 36 F.3d at 296.

[7]See Pacer Global Logistics, 272 F.Supp.2d at 788; Bearse, 170 F.Supp.2d at 116; McCaskey, 133 F.Supp.2d at 523; American Homecare, 27 F.Supp.2d at 112; Hickey, 978 F.Supp. att 240-41; Payne, 602 F.Supp. at 658; Eaby, 561 F.Supp. at 140; see also Gatz, 271 F.Supp.2d at 1160; Koh, 250 F.Supp.2d at 630.

occurred outside of Eastern District of California. Defendants Echols and Chapman, citizens of North Carolina, reviewed and approved the request for Elavil on behalf of a corporation does business in Florida (RX Medical). EZ RX does its business in New Jersey and shipped the drugs to Leisa and Ryan. Qualitest does its business in Alabama and is alleged to have failed to supervise the New Jersey, Florida, and North Carolina activities from its location in Alabama. The events and omissions giving rise to the claim occurred outside of this district and venue is improper.

*Plaintiffs' Opposition*

Plaintiffs argue that venue is appropriate because a substantial part of the events or omissions giving rise to their claim occurred in this district. Plaintiffs argue that the following acts demonstrate "substantiality:" the order for Elavil was placed in this district; the distributors were required to be licensed in California; the injury occurred in this district, the suicides occurred in this district; the investigations were conducted in this district; the treating physicians and other experts reside in this district; and that defendants subjected themselves to California jurisdiction by doing business in California.

*Discussion*

Plaintiffs have filed no additional affidavits, declarations, or evidence of any kind in opposition to Qualitest's 12(b)(3) motion. The claim made against Qualitest is that it was "negligent in the sale of controlled substances and dangerous drugs to on-line pharmacies which lacked proper licenses, failed to adequately supervise physicians, and dispensed drugs in lethal doses to patients who should not have had access to large quantities of drugs such as [Elavil]." Plaintiffs's First Amended Complaint at ¶ 30. Thus, the claim against Qualitest is negligent sale of Elavil to an improperly licensed pharmacy, EZ RX.

However, EZ RX is alleged to be a New Jersey on-line pharmacy. The sale of Elavil, thus would have been from an Alabama corporation (Qualitest) to a New Jersey corporation. Even if EZ RX is not properly licensed in New Jersey, the improper or negligent sale of Elavil by

20

1   Qualitest would appear to involve conduct occurring in either Alabama or New Jersey.  By way

2   of example only, given the apparent agreement of the parties concerning the location of Qualitest

3   and EZ RX, presumably sales negotiations and research into the licensure/qualifications of EZ

4   RX occurred in either Alabama or New Jersey or both.  Plaintiffs have not presented any

5   evidence of conduct by, or relating to, Qualitest that is material to their claims of negligence

6   against Qualitest.

7          The only identified conduct in Plaintiffs's opposition that clearly occurred in the Eastern

8   District of California is accessing a website that was operated by a co-defendant, the shipping of

9   the Elavil to the decedents by a co-defendant, and the suicides of the decedents.  Assuming

10  *arguendo* that these assertions are true, accessing a website/ordering Elavil on-line from co-

11  defendants in this District is an act by the decedents and arguably co-defendants, but it does not

12  relate to Qualitest.  Qualitest is not a party to the transaction, and accessing a website is not

13  material to the claim that Qualitest negligently sold Elavil to an unlicensed pharmacy.  Similarly,

14  shipping Elavil into the Eastern District of California is conduct by either EZ RX (a New Jersey

15  on-line pharmacy) or RX Medical (a Nevada company doing business in Florida).  The shipping

16  or delivery of Elavil to decedents is not conduct by Qualitest and does not involve the negligent

17  sale of Elavil by Qualitest to an unlicensed pharmacy.  Finally, it appears that the injury/suicides

18  did occur in this district.  However, again assuming *arguendo* that Plaintiffs' allegations are true,

19  the deaths of Leisa and Ryan Kelly appear to have been self-induced, and Leisa and Ryan appear

20  to have obtained the Elavil through RX Medical and EZ RX after Leisa and Ryan's order was

21  reviewed, and a prescription was issued, by Chapman and/or Echols (residents of North

22  Carolina).  The prescription itself was filled by EZ RX.  It does not appear that Qualitest was a

23  party to the on-line transaction, rather, the only apparent role that Qualitest played was

24  manufacturing Elavil.[8]  Although the locus of a tort injury is relevant in determining

26          [8]In their complaint, Plaintiffs generally allege that "each Defendants . . . are and at all times relevant hereto
27  were, the agent servant and/or employee of each of his, her, its, or their co-defendants, and in committing the acts
    alleged herein, were acting within the scope of his, her, its, or their authority as such agents, servants, and/or

"substantiality," "a substantial portion of the events or omissions giving rise to the claim" must have occurred in the Plaintiffs's chosen district.  See 28 U.S.C. § 1391(a)(2).  The allegations do not indicate that a "substantial part" of the events or omissions giving rise to Plaintiffs's claim against Qualitest occurred in the Eastern District of California.

The burden was on Plaintiffs to show that venue was proper as to Qualitest, and the allegations in Plaintiffs's complaint are not deemed or presumed to be true.  See Murphy, 362 F.3d at 1137; Argueta, 87 F.3d at 324; Koresko, 291 F.Supp.2d at 1160; Walker, 107 F.Supp.2d at 1237 n.2; Hickey, 978 F.Supp. at 240-41.  Plaintiffs submitted no evidence in support of their choice of venue and instead relied on arguments and the allegations in their complaint.  Even assuming the truth of certain allegations, Plaintiffs have failed to meet their burden of showing that venue is proper as to Qualitest in the Eastern District of California.

Since Plaintiffs have failed to meet their burden, the Court has the discretion to dismiss Qualitest from this suit.  From the complaint, Leisa and Ryan ordered and received Elavil, and later committed suicide, all in late January 2004.  The statute of limitations for California's wrongful death statute is two years.  Cal. Code Civ. Pro. § 335.1.  Plaintiffs would thus have approximately six months in which to refile in a different court.  Furthermore, Plaintiffs have not argued for a transfer of the claim against Qualitest to another court, but instead have simply argued that venue is appropriate in this district.  There is no indication that Plaintiffs want to pursue their claims against Qualitest in another district or have a preference as to a particular

---

employees, and with the permission and consent of his, her, its or their co-Defendants."  Plaintiffs' First Amended Complaint at ¶ 11.  However, in resolving a 12(b)(3) motion, unlike Rule 12(b)(6), the allegations in a plaintiff's complaint are not presumed to be true.  See Argueta, 87 F.3d at 324; Walker, 107 F.Supp.2d at 1037 n.2.  Moreover, this allegation is general, non-specific, and appears to be boilerplate.  Plaintiffs have presented no evidence that supports or suggests that any of the named defendants were the agents of Qualitest.  Cf. Murphy, 362 F.3d at 1140 (explaining that the court would "examine whether Murphy presented sufficient evidence to survive Schneider's Rule 12(b)(3) motion"); Spradlin v. Lear Siegler Mgmt. Serv. Co., 926 F.2d 865, 868-69 (9th Cir. 1991) (affirming 12(b)(3) dismissal regarding a forum selection clause where plaintiff failed to bring facts to the attention of the court, but instead provided only "the most general and conclusory allegations of fraud and inconvenience"); Vogt-Nem, Inc. v. M/V Tramper, 263 F.Supp.2d 1226, 1233 (N.D. Cal. 2003) (holding in 12(b)(3) dismissal under a forum selection clause that "Plaintiff has not met this burden as it offers no evidence to support its assertion of hardship.").  Moreover, Plaintiffs have not argued that some form of agency makes venue appropriate as to Qualitest.

district.  Also, considering the opposition to Defendant's motion, it is clear that venue is not appropriate as to Qualitest in the Eastern District of California.  Given these considerations, the Court will grant Defendant's Rule 12(b)(3) motion and dismiss Defendant from this case without prejudice.[9]  See Nichols, 991 F.2d at 1201-02; In re Hall, Bayoutree Assocs., Ltd., 939 F.2d at 804; King, 963 F.2d at 1304-05; Johnson, 950 F.2d at 588; Wood, 705 F.2d at 1523; Schwarzer, Tashima, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial ¶ 9:145.1 at 9-40.

## **MOTION TO STRIKE**

### *Rule 12(f)*

Rule 12(f) of the Federal Rules of Civil Procedure allows the court to strike from "any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating spurious issues by dispensing with those issues prior to trial.  See Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir 1993), *rev'd on other grounds*, 510 U.S. 517 (1994); Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir.1983).   Immaterial matter is defined as matter that "has no essential or important relationship to the claim for relief or the defenses being pleaded."  Fantasy, Inc., 984 F.2d at 1527.  Impertinent matter is defined as "statements that do not pertain, and are not necessary, to the issues in question."  Fantasy, Inc. 984 F.2d at 1527.  Granting a motion to strike may be proper if it will make the trial less complicated or if allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading will be prejudicial to the moving party.  See id.  Motions to strike are generally viewed with disfavor and are not frequently granted.  See Bassiri v. Xerox Corp., 292 F.Supp.2d 1212, 1220 (C.D. Cal. 2003). Courts must view the pleading under attack in the light more favorable to the pleader.  See

---

[9]Given the resolution of this issue, Defendant's 12(b)(6) motion will be denied as moot.  However, Plaintiffs have indicated that they intend to amend their complaint to exclude the emotional distress cause of action.

id. Accordingly, "motions to strike should not be granted unless it can be shown that no evidence in support of the allegation would be admissible, or those issues could have no possible bearing on the issues in the litigation." Gay-Straight Alliance Network v. Visalia Unified School Dist., 262 F.Supp.2d 1088, 1099 (E.D. Cal. 2001).   Nevertheless, a motion to strike may be used to strike a prayer for relief where the damages sought are not recoverable as a matter of law.  See Gay-Straight Alliance Network, 262 F.Supp.2d at 1110-11; Bureerong v. Uvawas, 922 F.Supp. 1450, 1479 n.34 (C.D. Cal. 1996); see also Nurse v. United States, 226 F.3d 996, 1004-1005 (9th Cir. 2000); Bassiri, 292 F.Supp.2d at 1224.

### a.   Wrongful Death Damages

California has limited the damages recoverable for a wrongful death.  See Bouley, 127 Cal.App.4th at 610.  California courts "have consistently held Code of Civil Procedure section 377 and the remedies contained therein completely occupy the field of wrongful death to the exclusion of any other action or remedy."  Vander Lind v. Superior Court, 146 Cal.App.3d 358, 364 (1983).

> Wrongful death damages are limited to the value of the benefits, including personal services, advice, and training, that the heirs could reasonably have expected to receive from the decedent.  Allen v. Toledo, 109 Cal.App.3d 415, 423 (1980).  The pecuniary value of the decedent's society, comfort and protection is recoverable, but mental and emotional distress, including grief and sorrow, are not.  Krouse v. Graham, 19 Cal.3d 59, 72 (1977).  Damages are thus highly unpredictable, and do not depend solely upon whether the decedent was married or otherwise, or left parents or children or spouses, but on the emotional and financial nature of any of those relationships.

Bouley, 127 Cal.App.4th at 610; see also Nelson, 113 Cal.App.4th at 793; Hiser v. Bell Helicopter Textron, Inc., 111 Cal.App. 640, 658 (2003); 6 Witkin, Summary of Cal. Law: Torts §§ 1423-1424 (9th Ed. 1988 & Supp.).  Punitive damages are generally not available in a wrongful death cause of action.[10]  Tarasoff v. Regents of the University of California, 17 Cal.3d

---

[10]Where a wrongful death cause of action is "based upon a death which resulted from a homicide for which the defendant has been convicted of a felony, whether or not the decedent died instantly or survived the fatal injury for some period of time," punitive damages are available.  Cal. Civ. Code § 3294(d); Shore, 122 Cal.App.4th at 175. Here, there is no indication that § 3294(d) is applicable to this case.

425, 450 (1976); <u>Shore v. Gunnett</u>, 122 Cal.App.4th 166, 175 (2004); 6 Witkin, Summary of Cal. Law: Torts § 1349 (9th Ed. 1988 & Supp.).

Here, Plaintiffs pray for the following damages: "General damages in a sum according to proof," and "Loss of love, companionship, comfort, affection, society, solace, and moral support," and "For exemplary and punitive damages, as allowable by law."  Defendants argue that since damages are recoverable for loss of love, companionship, comfort, etc., the prayer for general damages must refer to emotional stress and grief.  Plaintiffs make no response to the argument and instead state that they will strike any language from the complaint that the Court deems improper.

Plaintiffs have not clarified their position as to their request for "general damages."  Since Plaintiffs have not clarified what they mean by "general damages," the Court accepts Defendant's interpretation that Plaintiffs are requesting damages for emotional distress and grief.  Damages for emotional distress and grief are not recoverable under California's wrongful death statute.  <u>Bouley</u>, 127 Cal.App.4th at 610; <u>Nelson</u>, 113 Cal.App.4th at 793; <u>Hiser</u>, 111 Cal.App.4th at 658; 6 Witkin, Summary of Cal. Law: Torts §§ 1423-1424 (9th Ed. 1988 & Supp.).  To the extent that the prayer for relief seeks damages that are inapplicable (damages for emotional distress and grief), striking Subsection A of the Prayer for Relief is appropriate.  <u>See</u> <u>Nurse</u>, 226 F.3d at 1004-05; <u>Bassiri</u>, 292 F.Supp.2d at 1224; <u>Gay-Straight Alliance Network</u>, 262 F.Supp.2d at 1110-11; <u>Bureerong</u>, 922 F. Supp. at 1479 n.34.

Similarly, Plaintiffs have pointed to no basis for punitive damages other than the wrongful death statute and have not responded to Defendant's argument.  With the exception in Civil Code § 3294(d) of a homicide defendant convicted of a felony, punitive damages are not available under the wrongful death statute.  <u>See</u> Cal. Civ. Code § 3294(d); <u>Tarasoff</u>, 17 Cal.3d at 450; <u>Shore</u>, 122 Cal.App.4th at 175; <u>Vander Lind</u>, 146 Cal.App.3d at 364; 6 Witkin, Summary of Cal. Law: Torts § 1349 (9th Ed. 1988 & Supp.).  As there is no indication that § 3294(d) is applicable, the prayer for punitive and exemplary damages under Subsection F of the Prayer for

Relief will be struck.  See Nurse, 226 F.3d at 1004-05; Bassiri, 292 F.Supp.2d at 1224; Gay-Straight Alliance Network, 262 F.Supp.2d at 1110-11; Bureerong, 922 F. Supp. at 1479 n.34.

**b.     Attorneys' Fees & Costs**

"In an action involving state law claims, [federal courts] apply the law of the forum state to determine whether a party is entitled to attorneys' fees, unless it conflicts with a valid federal statute or procedural rule."  MRO Communs., Inc. v. AT&T Co., 197 F.3d 1276, 1282 (9th Cir. 1999).  Similarly, a federal court sitting in diversity applies federal procedural rules and thus, will award costs in accordance with federal law unless a state law provision allows for the awarding of costs as part of a substantive, compensatory damages scheme.  Clausen v. M/V New Carissa, 339 F.3d 1049, 1064-65 (9th Cir. 2003); see also Aceves v. Allstate Ins. Co., 68 F.3d 1160, 1167-68 (9th Cir. 1995); Baker v. Power Sec. Corp., 174 F.R.D. 292, 294 (W.D.N.Y., 1997).

In California, attorney fees are "allowable as costs under Section 1032 [of the Code of Civil Procedure]"when they are "authorized by" either "Contract," "Statute," or "Law."[11]  Cal. Code Civ. Pro. § 1033.5; Santisas v. Goodin, 17 Cal.4th 599, 606 (1998).  "Thus, recoverable litigation costs do include attorney fees, but only when the party entitled to costs has a legal basis, independent of the cost statutes and grounded in an agreement, statute, or other law, upon which to claim recovery of attorney fees."  Santisas, 17 Cal.4th at 606; see also Cal. Code Civ. Pro. § 1021 et. seq.; Carver v. Chevron USA, Inc., 97 Cal.App.4th 132, 143-44 (2002).  Furthermore, "generally, it is clear, attorneys' fees are not recoverable in personal injury or wrongful death actions."  Krouse v. Graham, 19 Cal.3d 59, 81 (1977); see also Cal. Code Civ. Pro. § 1021 et. seq.

Here, Plaintiffs have essentially alleged various negligence based causes of action and there are no specific statutes identified.  Plaintiffs did not respond to Defendant's argument.  Because Plaintiffs have not identified an agreement, statute, or other law upon which to base a

---

[11]Code of Civil Procedure § 1032 in relevant part reads: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."  Cal. Code. Civ. Pro. § 1032(b).

1   claim for attorneys' fees, recovery of such fees is inappropriate.  See Santisas, 17 Cal.4th at 606-

2   07; see also Krouse, 19 Cal.3d at 81; Cal. Code Civ. Pro. § 1021 et. seq.  However, awarding

3   "costs" to a litigant is generally a federal procedural matter and is governed by Federal Rules of

4   Civil Procedure 54 and 28 U.S.C. § 1821 and § 1920.  See Clausen, 339 F.3d at 1064-65;

5   Aceves, 68 F.3d at 1167-68; Baker, 174 F.R.D. at 294.  Costs are thus available under federal

6   procedural rules irrespective of the availability of attorneys' fees under state law.  Accordingly, it

7   is appropriate to strike Plaintiffs's claims for attorneys' fees, but not Plaintiffs's claims for costs,

8   at Subsection G.

9                                    **CONCLUSION**

10          Defendant Qualitest has brought motions to dismiss under Rules 12(b)(1), 12(b)(3), and

11   12(b)(6), and a motion to strike under Rule 12(f).

12          With respect to the 12(b)(1) motion, jurisdiction is not appropriate under 28 U.S.C. §

13   1331 because a federal question is not present on the face of the complaint.  Diversity jurisdiction

14   under 28 U.S.C. § 1332 has not been properly plead in that Plaintiffs state that their combined

15   damages exceed $75,000.  Because a wrongful death cause of action is an individual, and not a

16   joint, cause of action, combining damages to reach the $75,000 minimum threshold is

17   inappropriate.  Moreover, as Plaintiff David Kelly lacks standing to bring a wrongful death cause

18   of action for the deaths of Leisa and Ryan, Candy Kelly must meet the $75,000 minimum by

19   herself.  Because this is a wrongful death case, it does not appear to a legal certainty that Candy

20   Kelly cannot meet the minimum amount.  Although jurisdiction under § 1332 has not been

21   properly pled, it does not appear that amendment would be futile.

22          With respect to standing, the individuals who have standing to bring a wrongful death

23   cause of action under California Civil Code § 377.60 are strictly construed.  It is Plaintiffs's

24   burden to establish standing.  Candy Kelly has alleged only that she is the mother of Leisa and

25   the grandmother of Ryan.  She has not made sufficient allegations to show that she has standing

26   either as an heir or a dependent parent.  Since it appears that amendment would not be futile,

27

28                                         27

leave to amend is appropriate.  With respect to David Kelly's standing as an heir, Candy Kelly "inherits" or is ahead of David Kelly in the line of intestate succession.  Accordingly, as between Candy Kelly and David Kelly, only Candy Kelly would have standing to bring a wrongful death cause of action for the deaths of Leisa and Ryan Kelly.  David Kelly lacks standing because Candy Kelly has survived both Leisa and Ryan.  Dismissal due to lack of standing as to David Kelly without leave to amend is appropriate.

With respect to Defendant's 12(b)(3) motion, the Plaintiffs bear the burden of establishing that venue is proper as to each Defendant, and the allegations in the complaint are not presumed to be true.  Here, Plaintiffs submitted no declarations, affidavits, or other evidence, but instead relied on argument.  Plaintiffs have failed to meet their burden and have not shown that venue in the Eastern District of California is appropriate as to Qualitest.  Considering that Plaintiffs have not requested a transfer, Plaintiffs would not have a statute of limitations problem if they refile, and, given the moving papers, it is clear that venue is not appropriate as to Qualitest in this district, dismissal of Qualitest is appropriate.

With respect to the 12(f) motion, Plaintiffs make no arguments in opposition.  Plaintiffs's claims are for wrongful death.  Punitive damages and damages for emotional stress and grief are not recoverable in a wrongful death claim.  It is therefore appropriate to strike these claims.  Additionally, Plaintiffs have failed to identify a basis through agreement, statute, or law that would form the basis for an award of attorneys's fees.  Since attorneys's fees are generally not available in a wrongful death claim, it is appropriate to strike Plaintiffs's claim for attorneys's fees.  However, the awarding of costs is a matter of federal law, and costs are available to the prevailing party.  Accordingly, it is inappropriate to strike Plaintiffs's claims for costs.

Given the resolution of Qualitest's 12(b)(3) motion, Qualitest's 12(b)(6) motion is moot.

//

//

//

28

Accordingly, IT IS HEREBY ORDER that:

1.    Defendant's 12(b)(1) motion to dismiss for failure to properly allege jurisdiction is GRANTED with leave to amend;

2.    Defendant's 12(b)(1) motion to dismiss for failure to properly allege standing as to Candy Kelly is GRANTED with leave to amend;

3.    Defendant's 12(b)(1) motion to dismiss for failure to properly allege standing as to David Kelly is GRANTED without leave to amend;

4.    Defendant's 12(b)(3) motion to dismiss for improper venue is GRANTED and Defendant Qualitest is DISMISSED without prejudice;

5.    Defendant's 12(b)(6) motion is DENIED as moot;

6.    Defendant's motion to strike Plaintiffs's claims for punitive damages, attorneys's fees, and damages for emotional stress and grief is GRANTED; and

7.    Defendant's motion to strike Plaintiffs's claims for costs is DENIED.


IT IS SO ORDERED.

**Dated:    August 30, 2005**                       **/s/ Anthony W. Ishii**
0m8i78                                         UNITED STATES DISTRICT JUDGE

29